is number 08-1681, Castro versus Attorney General. Mr. Rapuzzo and Ms. Benerleon. May it please the court, I will reserve five minutes for rebuttal. Thank you, Honorable Court. Before you to address this matter, the issue in this case is whether or not this court has jurisdiction to review the decision of the BIA denying cancellation of removal to the petitioner. We submit that the court does have jurisdiction under the REAL-ID Act because we raise issues of law and issues under the Constitution. With respect to legal questions, I mean, one of the things you argue is that the IJ committed legal error by failing to look at evidence of the hardship cumulatively. But the IJ seemed to, for example, repeatedly, I think pages 5, 6, 7, and 14, say that he was looking at it cumulatively. Yes, Your Honor, it's not just cumulatively, it's also that the IJ did not consider a crucial factor, which is the separation of the minor children. There's five U.S. children here, born here, from their father. Now, the father basically is the natural father to two of the children, and he's a surrogate foster father for three of them. And there is absolutely no discussion about that, and that is a very, very crucial factor in the analysis, and I submit it rises to the level of a legal factor. It's not a matter of weighing evidence or a natural... But the IJ here, in a 14-page opinion, went through pretty carefully. You know, the lay of the land, I guess, was sort of in the Racinas case, which the BIA did grant cancellation of removal. And the IJ looked at those facts, and they compared them to this case, and while Racinas was a close case going in favor of the petitioner, unfortunately decided that this case didn't quite meet those criteria sufficiently that he was going to grant cancellation. And it's very sympathetic. I mean, and maybe all of us may have done something different in that position, but we don't have jurisdiction over discretion, do we? Well, no, not over discretion, Your Honor. However, I submit that this is not a matter of discretion here. Again, if the board, if the IJ, they do not follow the standard of law, then that's a legal question. That's correct, but where did the IJ not follow some prescription given to the IJ by the BIA? Well, if there's a legal standard, then that legal standard has to be applied, and it's a legal question whether or not a legal standard... But what's the legal standard? The legal standard is, well, generally speaking, it's extreme and exceptional unusual hardship. That's the umbrella, let's call it. But then there are factors that fall under that, and those factors become a part of a legal test. But what factor was not considered? The separation of the children from their father. Their father will be here, will be staying in the United States, and the children... But didn't you have the same issue in Racinus, that the children would be, were, or would be separated from their father if they went back? In fact, Racinus, well... Yes, there was an issue. That's my point, Your Honor, is that if it's part of the legal standard, then it has to be analyzed. Now, one of the fathers is in Mexico, correct? Yes, Your Honor. And the two that pay support are in the United States? Yes, Your Honor. And do we know if, do we know now if they would continue to pay support? There's no indication. It's, there's no child support order in place, and it's sort of a loose type of a relationship. And, you know, once his children are back in Mexico, the father's here. Well, they're staying here, first of all. One has a, his father who's petitioning for him to be here. That would be Mr. Patino. He's the actual, the surrogate father right now. So, that's a very important factor. And even in the Racinus case, and in all the case law, basically says the separation of the family is one of the major... Well, if one of the children's going to stay back here, possibly with the father, doesn't that cut against, unfortunately, Ms. Castro? Well, there are five children. So, we have to look at all five of them. And the 14-year-old is where now? They're all here. They're all here. The oldest one is in high school. But then they have all, they're all minors. Go ahead. So, are two of them in Mexico? Are two of the kids in Mexico? No. All of the children are here. Two went there briefly for a visit. That was one of the issues that was mentioned. The two oldest. Right. Right. So, we're arguing that, again, considering the separation from the family is a legal factor. It's not just a factual factor. It's part of a legal test. Because we have to have legal standards in order to apply the standard. And it breaks down into factors. So, whether or not you apply those factors at all is a legal question. At some point, it becomes a discretionary question. At some point. But as a start, it has to be a legal standard and a legal test. Or else, how do you apply discretion unless that discretion flows from something that's legal? And so, our point is that if you don't even address one of the legal factors that's crucial in a type of analysis, then it becomes a legal error. It's not an error of discretion. So, that's our point on the case law. Then, on the question of streamlining, again, that becomes a legal question. And I've set out in my briefs, case law, that the problem you've got here is that the, in large measure, what you were asking for, which was an opinion from the BIA, you ultimately got an opinion from the BIA. Albeit, it was only one judge as opposed to three. But I'm not sure there's much we can do about that. Well, the question is whether or not a three-member panel decision is warranted. And if the precedent is not being followed, then that would be a ground for a three-member panel decision. But here, it looks like precedent is being followed. They're saying that the template that they have to look to is racinus. Yes, but then we're back to the same question that I just discussed about not considering one of the family. So, that particular argument actually serves two purposes. One, to show that there is a legal question as to the standard, and also as to whether or not precedent is followed, which falls into the streamlining issue. So, our argument is that the fact that precedent was not followed because racinus says you have to look at the family unification issue, then that would satisfy that particular element also under the streamlining part of the argument. Again, being that a three-member panel decision was necessary. This was a, let's call it a close case. I mean, you know, it's a very difficult situation. We've got five U.S. children who are all going to have to end up back in Mexico, and there's a lot of issues involved. The oldest son, he's in high school. He wants to be an attorney. They don't really speak Spanish in the sense of being able to do it at a high level. To disrupt a high school student in that fashion is going to be traumatic. I mean, there's a lot of factors involved. I don't... It's a very sympathetic case. I understand, but the question is, do we have jurisdiction to consider it? Yes. And on the question of the, well, I just want to touch upon the merits, assuming that the court were to rule it had jurisdiction. Again, not following case law is an arbitrary and capricious finding. What case law did they not follow? We're going back to Rosinas. Well, Rosinas was a woman with six children, no family ties, or next to no family ties in Mexico, and she was the sole provider. This is quite a bit different. Yes. I mean, and in fact, that's what the IJ looked to in saying that this close case, this case didn't come as close as that case in getting over the line. Yes, but again, we can't forget the major point, Your Honor, which is the separation from their father. Again, that always comes back. And then getting into the actual... Yes, you've got two that are already separated from their father, right? Yes, Mr. Patino is actually the natural father of two of them, and he serves as the surrogate father for the other three, because they all live together, and he's a... Go ahead. You can go ahead. So he's basically the surrogate father for all of them, because there is no other quote-unquote man in the house, so he is acting as the father for all of them. I'm content, yes. We'll get you back on rebuttal then. Thank you, Your Honor. Thank you very much. Ms. Ben-Irion. Good morning. May it please the Court, Wendy Ben-Irion on behalf of the Attorney General. The Court should dismiss this challenge due to the agency's discretionary denial of cancellation of removal. What about the point that is made that the I.J. did not adequately consider, or did not consider, the separation of the family? The I.J. discussed the relationships between... Actually, there were three fathers involved, and the I.J. specifically discussed the relationships, recognized that the father, the boyfriend that the alien was living with, is splitting costs, 50 percent of the expenses. There was no testimony of the children relying exceptionally on the emotional support of that person. But where in the opinion does the I.J. address the issue that the family might be separated? Well, the I.J. says that the children are going to go back to Mexico with the mother. And there's an assumed... It's assumed that there would be a hardship when any families are split. Now, in this case, there is the issue of the boyfriend is not here legally, and the board in its published decisions have said that that is a fact that you can't put in favor of the petitioner, in part because this person could be subject to immigration enforcement and removed. Has anything begun with respect to that? I do not know. They didn't give the aliens a number, even though the judge asked for it. So I really can't say. But the immigration judge's decision on its four corners shows that the immigration judge was considering many factors. And although the children might lose the support of one father, they obviously were going to be gaining support of many family members in Mexico. There was a very large extended family there, which we're seeing this as completely different in that aspect. There was no family members in Mexico. Every single family member was in the United States. Here, there's not just the father of two of the children, but there is the children's grandparents, many, many cousins. There's aunts, at least three aunts that are there, and they all live in the same town, same city. And although the father from Mexico was not providing financial support, there was no provide emotional support for the children, and that there aren't other grandparents and whatnot that would do that. As well as the father's parents are there also. He lives with his parents. And he works. And also, the alien testified that she thought he would want to see his children. After all, they did go to visit him in Mexico. This case is also not that, that is, none of these factors are uncommon. That is, all these cases generally are very sympathetic because you have to be here for at least 10 years before you can even be considered. And that, in and of itself, takes into account that you will have established a certain standard of living. You know, you'll probably have children. These fact patterns, like this case, is not that uncommon. And that's, it actually, this case is very, very similar to the board decision that the immigration judge cited, which was the, sorry, the Andozola-Rivas decision. Here, the alien has a large amount of assets, which will help her tremendously when she returns to Mexico. She testified the equity in her house is about $100,000. She had $6,000 in savings at the time. That should go a long way in Mexico considering that the cost of living is substantially lower. And she said that that could be used to help with the transition and help the children adjust. But the bottom line is these are very difficult, always sympathetic cases. But Congress has stated that this should be left to the Attorney General and his delegates to determine where the line is, where it's crossed between exceptional, just hardship or even extreme hardship. This must be exceptional and unusual hardship. Not that, which you would comment. What do you say to the argument that we should at least send it back for a three-judge panel of the BIA to make a decision in this case in accordance with the regulations, your regulations? This case represents no situation that would call for that. It's, the judge talked about the cases, compared the facts of this case to the cases. There's no showing that they didn't follow any procedure. And I truly don't believe that what- It says that you didn't follow the procedure that requires a three-judge panel in certain specific instances. And you only had a one-judge panel. Well, I actually, I read the petitioner's brief as actually being concerned about there not being a written opinion, that it was an affirmance without opinion. That, I mean, in his reply brief, he says it was about a three-judge panel, but- Yeah, I think he asked for two things. He asked for one, an opinion, and two, that the opinion, the case be heard by a three-judge panel before the opinion issue. There isn't a large difference between, you know, there's not a large difference between the criteria for, a single person board member can reverse. So, there's, if it's- Yeah, but your regulations say that in specific situations, there's got to be a three-judge panel. Yes. He didn't come up with a three. You came up with a three in your regulation. Yes, but- Can we review the decision of the single member of the board to streamline this case? Well, under the Smirko case, this court has said you have jurisdiction to review the streamlining, whether to streamline a case or not, that decision. But that was not a, that was not this case where there was a specific, we held in Smirko that it was not a discretionary matter under the APA. Yes. It was not a case like this where Congress says you can't touch this subject matter. Right. So, we do argue in our brief that, by extension, you shouldn't really consider the streamlining argument because it requires getting into the underlying merits. Well, the Ninth Circuit has said that, right? That's what the Ninth Circuit has said, and we cite that case also in the brief. That you can't apply, given the standards that are in the regulation for streamlining- Yes. You can't review that without reviewing the merits. Exactly. Without doing a merits analysis. It seems like sort of a backdoor attempt to get to discretionary decisions that you can't reach, that Congress does not want to be reviewed. So, but if the court does determine it has jurisdiction over that, this case does not call for a three-member panel, or the affirmance without opinion did follow the regulations. The immigration judge's decision was very thorough, very well-reasoned. Again, cited the standard, followed the standard, compared the facts to cases, and there was nothing exceptional or novel about the facts in this case. How does the process normally work to go from an affirmance without an opinion to an opinion by one judge to an opinion by three judges, and then ultimately, as Racine has had, was an embanked case? What's the process you go through in order to get- To get a three-judge- From one to the other, to progress from one to the other? Well, my understanding is that, based on what the regulations state, that when the appeal is received at the Board of Immigration Appeals, that a chairperson looks at the administrative appeal. And in this case, the administrative appeal just challenged the- said some factors should be given- the judge should have given more weight to these factors and less weight to these factors, and basically challenged the factual findings. And that person then decides whether this raises something that has never been addressed or a novel issue. And the appeal, you have to look at the appeal to the board, and in this case, there was no novel issue. But how do you progress from one to the other then? Once this person looks at it, does this person make a decision that, okay, this just goes to one judge, and this judge has the discretion then to affirm without opinion? I cannot say for sure. I don't believe that the single person-I really can't say. The rule says that that chairperson decides whether it goes to three-person or single-person. Okay. But that's not- And it would go to three when? When the administrative appeal, the brief comes in and it's determined by the chairperson. But, I mean, what would make that person decide that there are facts or perhaps a misapplication of law that may exist with regard to the IJ's opinion? Yes, yes. But you must remember that the single board member, when they get this, if they do see that there is a misapplication of a fact, they may reverse. So they are able to address errors. If the error is not harmless and if it's material, they may reverse. They don't have to send it to a three-member board to do that. Just out of curiosity, how does it fall? Are most cases heard by one or finally adjudicated by one BIA judge or most? Well, I don't have statistics, but in my experience, for the most part, I see one-member, single-member decisions. I'm seeing we are-I mean, there's statistics to support that the number of affirmants without opinions has dropped substantially in the last approximately two years. It was when the cases were really backlogged before the board and that affirmants without opinion was being used more frequently. But the single board members are now issuing, for the most part, written opinions, at least commenting on certain factors, certain arguments with much more frequency. So that process is not being used as much, but the single board member is what I see. The huge backlog that exists after 01, 02, which caused the streamlining procedures to be put in place, I guess, in 03 or thereabouts, hasn't that been whittled down quite a bit? Yes. There was approximately a 50,000- About 65,000 at one point. Yeah, backlog of decisions. And I believe it's been-I'm not sure, but I believe it's down to about 20,000. Okay. Has there been any thought, do you know, as to whether the streamlining procedures should be amended in order to go back a little bit to what existed prior to 2003? I actually saw that there was proposed regulations by Ashcroft, but they never were passed. But I believe at this point what has happened is the- are you talking about going back to three members, or are you just talking about- ameliorating some of the streamlining procedures? I don't believe there has been any discussion because it seems, for the most part, because more written opinions are being issued. And there has been discussion internally about the board issuing more published decisions to answer some of the legal questions and standard questions. So there has been a push for them to issue more precedent decisions that provide guidance. But I don't think that the regulations are going-that there's been discussion changed in the regulations. Okay. Thank you very much. Thank you.  Thank you, Your Honors. On the question of the underlying issue being a discretionary one, and therefore the court's jurisdiction being precluded, I submit that that is not a sound principle of law. Basically, we're asking that the court have jurisdiction, and it should have jurisdiction, to review a process by which a decision is reached to render a discretionary decision. It's two different things. Process is really the crux, the heart and soul of our legal system, and we have to be able to review whether an agency followed the proper process to arrive at a decision. So because the underlying decision is discretionary- How do you distinguish SMRCO, which Judge Stapleton wrote? I'm sorry? How do you distinguish SMRCO? Well, if the APA can be reviewed under those circumstances, then there's no reason why we can't review the regulations of the immigration regulations. I mean, basically, because one is APA and others are regulations of the Attorney General, I don't think that's a distinction with any kind of a meaning. I mean, basically, we're reviewing agency action. So, and again, the same- But we're not reviewing, we can't review, unfortunately, issues that are committed to the discretion of the agency, correct? Yes. Once you get into that aspect, which is a, I mean, you have to get there first. You just don't just come out of a vacuum and arrive at discretion. There's a process by which you arrive there. And that process is written in the regulations. And also, it's also written in our Constitution, which we call due process. If a person has a certain right, in this case, we're talking about a liberty right, then in order to be deprived of that right, you have to get process that is due. And here we're talking about having a decision made by an agency, which gives an appellate court sufficient information to decide whether or not to review the case, to decide whether or not streamlining was in order, whether a three-member panel decision was decided properly or not, or whether one was needed. With this complete silence, and then on top of that, then to say, and you point to Congress, and say, look, and Congress also said that you can't review because it's a discretionary decision. We have no process. There's no court review of what the agency is doing. It's all internalized within itself and justified based on discretion. It does whatever it wants. One member decision, that's it. Next, one member decision. But in effect, in this case, you have a comprehensive decision of an IJ that distinguishes quite plausibly, again, whether you agree or disagree, quite plausibly, the Racinus case. So Ms. Castro loses. She goes up on appeal. She initially does not get an opinion. She later does get an opinion. And for us, we have jurisdiction taken away from us with respect to discretionary decisions, unless, as you note, in part of the process there is something or a legal matter that was missed so that you can argue that there was a legal or constitutional issue here. And the only one that you've identified is that you believe that one of the factors that should have been considered, which is the separation of the family, was not considered by the IJ. And Ms. Pena-Leon says, but in fact, it's understood that if this person, of all five children, go back with their mother to Mexico, it's highly likely that the two fathers that continue to reside in the United States will be, well, the one's already separated, but the one who's currently with them will be separated. And we do not know as to whether he will continue to pay any kind of financial support. There's also a procedural due process issue with respect to the regulations themselves. Because, again, if the regulations give you that process, and then if you're denied that process, then we also submit that. But what's your argument that you are entitled to a three-judge panel, the BIA?  The decision of the board, of the IJ and the board? But the precedent was Racines. Yes, and going back, but it did not include a discussion of the family separation issue. So it's contrary to precedent. That's one of the crucial parts of it. And there are other cases also that I cited in my brief where family separation is a critical issue. That's a legal element which has to be considered, and you have to apply that to the facts. Your due process claim, did you ever raise that before the IJ or at any point before the BIA? No, well, it couldn't have been raised because the due process issue arises because of what the BIA did. So we can't raise it until they do something. So that's why it doesn't exist, you know, it wouldn't exist before the IJ. It doesn't exist before the BIA because- You filed a motion to reconsider. Yes. Did you argue due process in that motion to reconsider? No, that was filed at the same time that the appeal was filed. Again, that was before the BIA acted. Right, so you could have raised it before the most recent opinion was written, but you didn't. Well, because the motion to reconsider is based on what happened earlier, what happened earlier, which was the initial decision. Yeah, the initial decision of the board. So it wasn't raised in that motion. It was not raised. Okay. Thank you. Thank you, Your Honor. Thank you very much. Thank you, Your Honors. Thank you to both counsel for well-presented arguments. We'll take the matter under advisory. Thank you.